WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Alfredo Enos Landeros,<br><br>Defendant. | No. CR-16-0855-TUC-RCC (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court are Defendant's Amended Motion to Suppress (Doc. 17) and Motion to Dismiss (Doc. 19). The Government has filed its responses. Govt.'s Response to Def.'s Mot. to Suppress (Doc. 26); Govt.'s Response to Def.'s Mot. to Dismiss (Doc. 27). Defendant replied (Docs. 28 & 29). As such the motions are full briefed and ripe for review.

Defendant is charged with one (1) count of being a felon in possession in violation of Title 8, United States Code, Sections 922(g)(1) and 924(a)(2). Indictment (Doc. 1) at 1–2. Defendant seeks suppression of the bullets found on his person as a result of an allegedly unlawful seizure. *See* Def.'s Mot. to Suppress (Doc. 17). Defendant further seeks dismissal of the indictment based on officers allegedly ignoring his cries of pain,

which Defendant urges was outrageous conduct amounting to "torture." See Def.'s Mot. to Dismiss (Doc. 19).

Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for an evidentiary hearing and a report and recommendation. On December 12, 2016, an evidentiary hearing was held before Magistrate Judge Macdonald regarding the two motions. Minute Entry 12/12/2016 (Doc. 32). The Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's motions.

## I. FACTUAL BACKGROUND

On February 9, 2016, at approximately 12:16 a.m., Pascua Yaqui Police Department (PYPD) Officer Clinton Baker conducted a traffic stop of a vehicle that was traveling westbound on Valencia Road adjacent to Casino Del Sol. Hr'g Tr. 12/12/2016 (Doc. 38) at 5:10–7:3. Officer Baker has been a PYPD officer for nine (9) years. *Id.* at 5:12–14, 27:8–10. Officer Baker observed that the vehicle appeared to be traveling in excess of the posted speed limit of 25 miles per hour, and confirmed with his radar gun that the vehicle was traveling 36 miles per hour. *Id.* at 5:10–7:3, 30:1–7. Officer Baker initiated the traffic stop, and the vehicle pulled into the Casino del Sol parking lot. *Id.* at 7:15–25. When Officer Baker approached the vehicle, he observed four occupants. *Id.* at 8:3–9. Officer Baker advised the driver, Fernando Padilla, that the reason for the stop was because Padilla was speeding. Hr'g Tr. 12/12/2016 (Doc. 38) 9:9–17. Padilla apologized for speeding. *Id.* at 9:9–17. Officer Baker testified that he could smell alcohol in the car and observed two female passengers in the back seat, whom he

- 2 -

believed were under the age of twenty-one (21).[1]  *Id.* at 9:9–17, 47:8–25  Officer Baker further testified that there was a male passenger in the front seat, and identified him as the Defendant. *Id.* at 10:2–5, 12:8–21.

Officer Baker testified that the smell of alcohol suggested underage drinking, and he proceeded to ask for identification of all the passengers. *Id.* at 10:12–19, 47:8–25. Officer Baker also testified that it is standard procedure to identify every person in the vehicle during a traffic stop, because individuals in the vehicle may have an outstanding warrant, there could be an alert such as mental health or missing persons, or other alerts that may impact officer safety. *Id.* at 48:7–25.  Officer Baker further testified that the female passengers in the back seat gave him their identification, which indicated that they were twenty-one (21) and nineteen (19) years of age. Hr'g Tr. 12/12/2016 (Doc. 38) 10:12–19.  Officer Baker testified that the Defendant refused to provide identification, and became very argumentative, interrupting and yelling while Officer Baker attempted to speak with the driver and other passengers. *Id.* at 10:12–11:2, 35:5–23.  Officer Baker further testified that Defendant continued to refuse to provide him identification or any other information, and in light of the number of individuals in the vehicle, Officer Baker called for assistance. *Id.* at 11:3–8, 35:5–23.

PYPD Officer Frank Romero arrived on scene and observed Officer Baker addressing the driver of the vehicle. *Id.* at 57:12–19.  Officer Romero testified that as he approached he could hear another person, the front seat passenger, yelling out toward

---

[1] Officer Baker's second supplemental report indicates that he believed that back seat passengers were under the age of eighteen (18). Hr'g Tr. 12/12/2016 (Doc. 38) 32:11–34:12.

Officer Baker. *Id.* at 57:12–58:2, 66:10–67:19. Officer Baker asked Officer Romero to speak to Defendant, to find out why he was upset and obtain his name. Hr'g Tr. 12/12/2016 (Doc. 38) 11:15–12:7, 58:3–8, 67:20–23. Officer Romero also identified the front seat passenger as Defendant Landeros. *Id.* at 52:9–18. Officer Romero knocked on the front passenger window and asked the Defendant for his identification. *Id.* at 58:20–25. The Defendant responded, "Fuck no." *Id.* at 59:1–2. Officer Romero testified that he asked Defendant to exit the vehicle, and Defendant refused. *Id.* at 59:3–9. Officer Romero further testified that after he asked Defendant to step out of the vehicle, Landeros opened the passenger vehicle door slightly, and then quickly shut it again. Hr'g Tr. 12/12/2016 (Doc. 38) 60:12–17, 70:9–13. The Defendant yelled, "This is bullshit, I ain't gonna step out, fuck these cops." *Id.* Officer Romero requested that his sergeant, PYPD Sergeant Jose Montano, respond to assist as well. *Id.* at 60:18–19.

Officer Romero testified that while he was waiting for Sergeant Montano to respond, Officer Baker came around to the passenger's side of the vehicle and together requested Defendant step out of the vehicle. *Id.* at 61:8–22. Officer Baker confirmed that he, along with Officer Romero, commanded the Defendant to exit the vehicle. *Id.* at 11:15–12:7, 36:7–13. Officer Baker also testified that either he or Officer Romero opened the door slightly before Defendant slammed it shut again. Hr'g Tr. 12/12/2016 (Doc. 38) 11:15–12:7, 36:14–21. Officer Romero testified that the female passengers repeatedly told the Defendant, whom they called "Alfredo" or "Sauce," to "come on" and get out of the vehicle. *Id.* at 61:8–22. Eventually, the Defendant stepped out of the vehicle. *Id*. at 37:1–2, 61:8–22. Sergeant Jose Montano, Jr. arrived on scene while

- 4 -

Officers Baker and Romero were trying to get the Defendant out of the vehicle. *Id.* at 81:15–21, 88:10–90:2.

Officer Romero testified that after Defendant exited the vehicle, the officer continued to ask him his name. *Id.* at 61:23–62:13. Defendant continued to refuse to respond. *Id.* Officer Romero further testified that in light of Defendant's reluctance to step out of the vehicle and his generally aggressive nature, the officer asked if he had any weapons. Hr'g Tr. 12/12/2016 (Doc. 38) 62:14–22, 71:6–72:5. Defendant responded affirmatively, and indicated that he had a knife in one of his pockets. *Id.* 62:23–63:3, 71:6–72:5. Officer Romero testified that he asked for permission to search, which Defendant granted. *Id.* at 63:4–6, 71:6–72:5. Officer Romero further testified that after a search of Defendant's person, he discovered a glass smoking pipe with some residue in it, and six (6) nine (9) millimeter Luger rounds of bullets. *Id.* at 63:7–11. Defendant refused to answer any further questions regarding drugs and guns by Officer Romero, so the officer detained him, placed his handcuffs on Defendant, and placed him in the back of his vehicle. *Id.* at 63:12–23. Officer Romero testified that he was the one who initially handcuffed the Defendant. Hr'g Tr. 12/12/2016 (Doc. 38) 63:24–64:1. Officer Romero further testified that although Defendant was resistant to being handcuffed, the officer's usual technique is to place two fingers between the wrists and the actual handcuff to ensure that the cuffs are not too tight. *Id.* at 64:2–14, 72:17–73:1. Officer Romero further testified that he double locked the handcuffs to ensure that they would not accidentally get tighter. *Id.* at 64:15–19. Officer Romero also testified that he did not remember Defendant saying anything about the handcuffs being too tight. *Id.* at 64:20–

- 5 -

22. Officer Romero testified that he did not recall having any concerns regarding the handcuffs, and escorted Defendant back to one of the patrol vehicles. *Id.* at 65:1–13. Officer Baker's also testified that Defendant had not said anything while being handcuffed. Hr'g Tr. 12/12/2016 (Doc. 38) 14:18–24.

Sergeant Montano testified that he heard Defendant complain that his handcuffs were too tight. *Id.* at 82:23–3. Sergeant Montano checked the handcuffs and was able to place his index finger between Defendant's wrists and the cuffs. *Id.* at 80:22–81:3, 83:4–15. Sergeant Montano also ensured that the handcuffs were double locked. *Id.* at 80:22–81:3, 83:16–17.

Officer Baker testified that as soon as the Defendant exited the vehicle, he observed two (2) open containers of alcohol—Negro Modelo 12 ounce bottles, several pocket knives, and a large machete in the front passenger seat where the Defendant had been sitting. *Id.* at 11:15–12:7, 12:23–13:16, 37:1–9. Officer Baker further testified that once he saw the open containers, he called out for an arrest time. *Id*. 13:23–14:5. Officer Baker also testified that having an open container in a moving vehicle is a violation of Arizona and Pascua Yaqui law. *Id.* at 14:6–10.

Officer Baker testified that after Defendant exited the vehicle and was placed under arrest, he began conducting a search incident to the arrest. *Id.* at 13:17–15:8. Officer Romero apprised Officer Baker of the pipe and ammunition that was found on Defendant's person. Hr'g Tr. 12/12/2016 (Doc. 38) 14:25–15:13. Officer Baker again attempted to ascertain the Defendant's name. *Id.* at 15:14–22. The Defendant confirmed his first name was Alfredo and that he was Native American, but refused to provide his

- 6 -

last name or date of birth. *Id.*

Officer Baker testified that Defendant was screaming and yelling about his handcuffs being too tight. *Id.* at 15:23–16:4. Officer Baker further testified that he checked the handcuffs, and was able to place a finger between Defendant's wrist and the handcuff. *Id.* at 15:23–16:14, 49:24–50:20. Officer Baker also testified that he observed that the handcuffs were double locked and not pinching. Hr'g Tr. 12/12/2016 (Doc. 38) 15:23–16:14, 49:24–50:20. Officer Baker denied observing any physical injuries on Defendant's person. *Id.* at 16:15–20. Officer Baker testified that Defendant had been and continued to be noncompliant throughout the duration of the stop. *Id.* at 17:1–7. Officer Baker further testified that after he removed Defendant from the patrol car to check the handcuffs, Defendant refused to return to the vehicle and had to be physically placed back in the patrol car. *Id.* at 17:1–12. Officer Baker testified that the force used by the officers was not excessive. *Id.* Sergeant Montano testified that the Defendant complained of his hand being broken after the struggle to return him to the vehicle; however, the sergeant did not observe any injuries. *Id.* at 85:6–23, 92:19–93:23.

Officer Baker testified that he spoke with the other occupants of the vehicle, but was unable to determine from them who the Defendant was. Hr'g Tr. 12/12/2016 (Doc. 38) 17:20–18:8. Officer Baker described the female back seat passengers as generally cooperative, indicated that he did not smell alcohol on them, and that they advised him that they had not been drinking. *Id.* at 18:1–14. Sergeant Montano spoke with the driver and attempted to obtain Defendant's name. *Id.* at 84:7–21.

Officers Baker and Romero conducted a search of the vehicle after removing all of

- 7 -

the occupants. *Id.* at 18:15–18.  Officer Baker stated that in the backseat they found two purses, which the females claimed, and a black backpack, which the females advised belonged to Alfredo. *Id.* at 18:19–19:1, 38:17–39:3. Officer Baker testified that the officers found more drug paraphernalia, baggies containing a white crystal substance, and a bank card belonging to Alfred Landeros. *Id.* at 19:2–9. A field test indicated that the white substance tested positive for methamphetamine. Hr'g Tr. 12/12/2016 (Doc. 38) 21:18–23. Officer Baker further testified that he entered the name on the bankcard into a police database, which returned a picture of Defendant. *Id.* at 19:10–20. Officer Baker testified that he then called for a Pascua Yaqui detention officer to come pick up Defendant. *Id.* at 19:21–20. Officers Baker and Romero testified that during the vehicle search, Defendant was screaming, yelling, and kicking in the back of the patrol vehicle. Hr'g Tr. 12/12/2016 (Doc. 38) 20:2–21, 39:4–14, 65:14–66:11. Sergeant Montano corroborated this testimony. *Id.* at 86:1–16.

Officer Thomas Valenzuela of the Pascua Yaqui Detention arrived on scene to transport the Defendant. Hr'g Tr. 12/12/2016 (Doc. 38) 101:7–19. Sergeant Montano testified that the Defendant refused to get into the detention vehicle, creating another struggle. *Id.* at 86:19–87:3. Officer Baker described Defendant unwilling to get into the detention vehicle and kicking his feet in an attempt not to get into the vehicle. *Id.* at 20:22–21:5, 53:20–54:2. Officer Valenzuela corroborated these accounts. *Id.* at 103:7–15. Officer Valenzuela and Sergeant Montano both testified that they did not observe Defendant to be in any pain at that time. *Id.* at 87:19–22, 103:16–18.

Officer Valenzuela transported Defendant to the Pascua Yaqui detention center.

*Id.* at 103:19–104:6. Officer Valenzuela testified that Defendant complained that the handcuffs were too tight. *Id.* at 104:17–105:8. Upon arriving at the detention facility, Officer Valenzuela checked the handcuffs and was able to place his finger between Defendant's wrists and the handcuffs. *Id.* Officer Valenzuela did not observe any injuries to Defendant's hands or wrists or feel any abnormalities. *Id.* at 105:9–20. Officer Valenzuela further testified that while processing Defendant, he did not complain of any injuries. *Id.* at 105:24–106:18.

Allison Cunningham testified that Defendant was her boyfriend of approximately three (3) years, and that she was one of the backseat passengers during the February 9th incident. Hr'g Tr. 12/12/2016 (Doc. 38) 108:16–109:9. Ms. Cunningham denied drinking that evening. *Id.* at 110:9–10. Ms. Cunningham testified that during the stop, the officer requested that they roll that the passengers roll their windows down and provide identification because they looked under eighteen (18) and it was past curfew. *Id.* at 112:2–21. Ms. Cunningham further testified that Alfredo never identified himself to the extent that the police officers requested. *Id.* at 112:22–113:1. Ms. Cunningham denied that the officer ever requested that Alfredo get out of the vehicle, but eventually just pulled him out. *Id.* at 113:2–20, 119:8–14.

Ms. Cunningham testified that after Defendant was out of the vehicle she heard him screaming in pain. Hr'g Tr. 12/12/2016 (Doc. 38) at 114:4–21. Ms. Cunningham further testified that she attempted to get out of the vehicle to record what was happening on her cell phone, but an officer prevented her from doing so. *Id.* at 114:19–115:10, 120:10–14. Ms. Cunningham claimed that there were lacerations from handcuffs and

- 9 -

bruising on Defendant's wrist after this incident. *Id.* at 116:11–23. Ms. Cunningham also testified that she took pictures of the injuries; however, her cell phone was broken and she no longer has the photographs. *Id.* at 122:12–123:14, 125:10–126:4.

Ms. Teresa Fields, the other backseat passenger also testified, and denied drinking that evening. Hr'g Tr. 12/12/2016 (Doc. 38) 129:18–22. Ms. Fields testified that the police officer asked for identification because it was past curfew and he wanted to ensure everyone was of age. *Id.* at 130:13–24. Ms. Fields testified that the officers pulled Defendant out of the vehicle and she heard him yelling afterward. *Id.* at 131:19–133:2. Ms. Fields further testified that when they got out of the vehicle to record a video, they were handcuffed, briefly patted down, and sat down on the curb. *Id.* at 133:3–22. Ms. Fields also testified that she did not know who the backpack belonged to. *Id.* at 134:10–22. Ms. Fields testified that she saw the injury on Defendant's wrist when she attended his court date with Ms. Cunningham. *Id.* at 135:16–136:5, 138:10–139:5.

On November 20, 2013, Defendant Alfredo Enos Landeros was convicted of Criminal Damage, Solicitation to Unlawfully Possess a Narcotic Drug and Unlawful Possession of Drug Paraphernalia in Arizona State Court. *See* Ariz. Superior Ct., County of Pima, Case No. CR20134259. As such, on April 27, 2016, the Defendant was indicted by a Federal Grand Jury on one (1) count of Possession of Ammunition by a Convicted Felon. Indictment (Doc. 1).

. . .

. . .

. . .

## II. ANALYSIS

### A. *Motion to Suppress*

Defendant seeks suppression in this case, asserting that he was unlawfully seized and that the bullets were only found as a result of this unlawful seizure. *See* Def.'s Mot. to Suppress (Doc. 17).

### **1. Fourth Amendment—In General.**

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). For the police to conduct a valid stop, they must "have a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (internal quotes and citation omitted). "[T]he level of suspicion required for a *Terry* stop[, however,] is obviously less demanding than that for probable cause." *Id.* at 8, 109 S.Ct. at 1585 (internal citations omitted). "An investigatory stop of a vehicle is reasonable under the Fourth Amendment if the officer reasonably suspects that a traffic violation has occurred." *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006) (citing *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005)). It is well-established law that "the constitutional reasonableness of traffic stops [does not] depend[] on the actual motivations of the individual officers involved." *United States v. Whren*,

517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996).

"Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc)). "The reasonable-suspicion standard is not a particularly high threshold to reach." *Valdes-Vega*, 738 F.3d at 1078. Furthermore, although "a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744) (citations and internal quotation marks omitted).

When making a reasonable-suspicion determination, the reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citations omitted); *see also United States. v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990). In so doing, officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* at 273, 122 S.Ct. at 750-51. (citations omitted); *see also Valdes-Vega*, 738 F.3d at 1078. Moreover, what may seem to be innocuous conduct when viewed in isolation may be appropriately considered when considering the totality of the circumstances; thus, it is inappropriate to view factors in isolation and to give no weight to factors which may have an innocent explanation. *Arvizu*, 534 U.S. at 273-75, 122 S.Ct. at 750-51; *see also Cotterman*, 709

F.3d at 970 ("It is not our province to nitpick the factors in isolation but instead to view them in the totality of the circumstances."). Furthermore, "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Valdes-Vega*, 738 F.3d at 1078-79 (citing *Arvizu*, 534 at 277, 122 S.Ct. 744) (alterations in original).

### 2.  Authority to initiate stop.

Defendant argues that PYTP Officer Baker was "not authorized to conduct such a stop outside of the Pascua Yaqui reservation boundaries." Def.'s Amended MTS (Doc. 17) at 6. The Government concedes that its initial disclosure "was unclear as to whether Officer Baker was [Arizona Peace Officer Standards and Training Board ("AZPOST")] certified at the time of subject traffic stop." Def.'s Response to Amended MTS (Doc. 26) at 4. Subsequently, however, the Government has "obtained documentation confirming Officer Baker's AZPOST certification at the time of the incident." *Id.* at 4–5. The information was provided to Defendant and the parties agree that this issue is moot. Hr'g Tr. 12/12/2016 (Doc. 38) 140:4–10. Accordingly, Officer Baker had authority to conduct the traffic stop.

### 3.  Extension of the seizure.

Defendant asserts that "the seizure of the car and its passengers became unlawful because Officer Baker chose to investigate the perceived offense of a curfew violation, even though the passengers had not been within tribal jurisdiction." Def.'s Amended MTS (Doc. 17) at 7. The Government contends that Officer Baker executed a valid traffic stop and then smelled alcohol leading to investigation of the newly suspected

crimes of underage drinking and driving while under the influence.  Govt.'s Response to MTS (Doc. 26) at 6.

As an initial matter, "mere police questioning does not constitute a seizure unless it prolongs the detention of the individual, and, thus, no reasonable suspicion is required to justify questioning that does not prolong the stop." *United States v. Mendez*, 476 F.3d 1077, 1080 (quoting *Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005)) (internal quotation marks omitted).  "[W]hether questioning unrelated to the purpose of the traffic stop and separate from the ticket-writing process that prolongs the duration of the stop may nonetheless be reasonable . . . [upon] examin[ation] [of] the totality of the circumstances surrounding the stop, and [a] determin[ation] whether [Officer Baker's] conduct was reasonable." *United States v. Turvin*, 517 F.3d 1097, 1101 (9th Cir. 2008) (internal quotations and citations omitted).

Here, Officer Baker had probable cause to believe that a traffic violation had occurred when he clocked the vehicle traveling in excess of the posted speed limit.  *See* Hr'g Tr. 12/12/2016 (Doc. 38) at 5:10–7:3, 30:1–7.  As such, his decision to stop the vehicle was constitutionally valid.  *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").  While stopped, Officer Baker smelled alcohol in the vehicle. *Id.* at 9:9–17, 47:8–25.  Officer Baker also believed that the two female passengers were under the age of eighteen (18).  *Id.* at 32:11–34:12.  Officer Baker's decision to investigate further to ensure that there was no underage drinking or a curfew violation

- 14 -

was not unreasonable.  Neither was the duration of the stop in light of these additional concerns.  As such, Defendant's motion must fail.

### 4. Demand for identification.

Defendant asserts that Officer Baker arrested him for failing to identify himself, which is not a crime.  Def.'s Amended MTS (Doc. 17) at 11.  The Government asserts that Defendant was lawfully arrested for refusing to obey law enforcement commands and possession of open containers of alcohol in a vehicle.  Govt.'s Response to MTS (Doc. 26) at 7.

Arizona state law provides "[i]t is unlawful for a person, after being advised that the person's refusal to answer is unlawful, to fail or refuse to state the person's true full name on request of a peace officer who has lawfully detained the person based on reasonable suspicion that the person has committed, is committing, or is about to commit a crime.  A person detained under this section shall state the person's true full name, but shall not be compelled to answer any other inquiry of a peace officer."  A.R.S. §13-2412. Arizona state law further provides that "[a] person shall not willfully fail or refuse to comply with any lawful order or direction of a police officer invested by law with authority to direct, control or regulate traffic."  A.R.S. § 28-622.  Furthermore, "[t]he police may ask people who have legitimately been stopped for identification without conducting a Fourth Amendment search or seizure."  *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007) (request for passenger's identification after a legitimate traffic stop not in abrogation of the Fourth Amendment).

Here, officers asked for Defendant's identification and requested that he step out

of the vehicle. Hr'g Tr. 12/12/2016 (Doc. 38) 10:12–12:7, 35:5–23, 36:7–13, 58:20–60:19, 61:8–22. The Court finds the officers testimony credible regarding the circumstances surrounding their encounter with Defendant. Defendant was belligerent and yelled at officers. *Id.* Officers were investigating possible underage drinking, as well as following their standard protocol for obtaining identification from all passengers during a legitimate traffic stop. *Id.* Upon Defendant exiting the vehicle, Officer Baker saw two open containers of alcohol in the vehicle's passenger compartment, which is in violation of both Pascua Yaqui and Arizona law. *Id.* at 11:15–12:7, 12:23–14:10, 37:1–9. As such, the arrest was legal and Defendant's motion should be denied.

### **5. Search of Defendant.**

Defendant seeks suppression of the bullets found on his person during his arrest. Def.'s Amended MTS (Doc. 17) at 14.

It is well-established that a search incident to a lawful arrest is an exception to the warrant requirement. *Gant*, 556 U.S. at 338, 129 S.Ct. at 1716; *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The warrantless search incident to arrest serves the purpose of "protecting arresting officers and safeguarding any evidence of the offense that an arrestee might conceal or destroy." *Gant*, 556 U.S. at 339, 129 S.Ct. at 1716.

Here, Defendant indicated that he had a knife on his person and he was being arrested for failure to comply with the officers' directions and open container. Hr'g Tr. 12/12/2016 (Doc. 38) at 13:17–15:8, 62:14–63:3, 71:6–72:5. Furthermore, Defendant

consented to the search of his person. *Id.* at 63:4–6, 71:6–72:5. The search was lawfully conducted in conjunction with arrest. As such, suppression is inappropriate.

### B. Motion to Dismiss

Defendant seeks dismissal of the Indictment because he asserts that the officers ignored his cries for help due to the pain that the handcuffs were causing him and that their conduct was outrageous. *See* Def.'s Mot. to Dismiss (Doc. 19). He further alleges that this amounted to "torture."

Each officer that came in contact with Defendant double-checked to ensure that his handcuffs were not too tight. *See* Hr'g Tr. 12/12/2016 (Doc. 38), testimony of Officers Baker, Romero, Valenzuela, and Sergeant Montano. The Court finds the testimony of these officers credible. Moreover, none of the officers observed any injury when checking Defendant's handcuffs. *See id.* Nor did Defendant report any injury or pain to Officer Valenzuela when he was processing him at the detention center. *Id.* at 105:24–106:18.

The two female passengers testified that they observed extensive bruising to Defendant's wrist a week after the stop, the evidence does not support that this occurred as a result of the conduct of the PYPD officers on the night of February 9, 2016.

### III. CONCLUSION

The Court finds that there were no violations Fourth Amendment violations related to the traffic stop or Defendant's arrest in this case. As such, suppression is inappropriate. The Court further finds that PYPD officers did not act outrageously.

## IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Judge DENY Defendant Alfredo Enos Landeros's Amended Motion to Suppress Statements (Doc. 17) and Motion to Dismiss (Doc. 19).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  No reply shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number: **CR-16-0855-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 24th day of January, 2017.

Honorable Bruce G. Macdonald
United States Magistrate Judge